

400 Crossing Boulevard
8th Floor
P.O. Box 5933
Bridgewater, NJ  08807
T: 908-722-0700
F: 908-722-0755

WRITER'S DIRECT DIAL & EMAIL ADDRESS
(908) 252-4166
egsponzilli@norris-law.com

August 1, 2025

**VIA: ECF & Hand Delivery**
Hon. Claire C. Cecchi, U.S.D.J.
District Court of the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

      Re:    Fakla v. University Behavioral Health Care, et al.
             Civil Action No.: 2:25-cv-13764

Dear Judge Cecchi:

This firm represents Defendant, Rutgers, The State University of New Jersey (misidentified in Plaintiff's Complaint as University Behavioral Health Care ("UBHC"), a non-suable constituent unit of Rutgers) ("Defendant" or "Rutgers") in the above-referenced matter. Please accept this letter brief, in lieu of a more formal brief, in support of Rutgers' Motion to Vacate a State Court *ex parte* issued order of temporary restraints in this removed case, pursuant to Fed. R. Civ. P. 65.

## PRELIMINARY STATEMENT

Defendant Rutgers respectfully requests that this Court vacate the temporary restraints entered *ex parte* on July 16, 2025, by the Superior Court of New Jersey, Middlesex Vicinage (the "*Ex Parte* Order"). The *Ex Parte* Order and the attendant



Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 2

temporary restraints should be vacated because: (1) the Superior Court of New Jersey did not provide notice to Rutgers prior to the entry of its restraints, which restraints bar Rutgers from responding to an evaluation request by law enforcement and exercising its statutory duty to screen potentially dangerous mentally ill persons; (2) Pro Se Plaintiff John Fakla's ("Plaintiff") allegations as set forth in his Verified Complaint submitted in support of Plaintiff's application for temporary restraints fall far short under state (and federal) law of meeting the requirements necessary for the imposition of the *Ex Parte* Order's extraordinary relief, as set forth in Crowe v. De Gioia, 179 N.J. Super. 36 (1981)[1]. In particular, the Verified Complaint fails to demonstrate emergent harm absent restraints, fails to demonstrate likelihood of success on the merits, fails to demonstrate irreparable harm, and fails to demonstrate the burden on the Plaintiff absent restraints outweighs the burden on Defendant with restraints, and that the issuance of restraints is in the public interest; and (3) the *Ex Parte* Order, as entered by the Superior Court of New Jersey, is so overbroad that the relief sought and restraints imposed therein do not meet the specificity

---

[1] Plaintiff's application also fails under the requirements set forth in Delaware River Port Auth. v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-20 (3d Cir. 1974).

4919-0488-6617, v. 2

**Norris McLaughlin, P.A.**

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 3

requirements of New Jersey Court Rule 4:52-1 or <u>Fed. R. Civ. P.</u> 65 and should be invalidated.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On June 27, 2025, Plaintiff filed a Verified Complaint and Order to Show Cause ("OTSC") seeking temporary restraints against Defendant Rutgers and Defendant Piscataway Police Department ("PPD") in the Superior Court of New Jersey, Middlesex Vicinage under Docket No. MID-L-3942-25 (the "State Court Action"). <u>See</u>, Declaration of Edward G. Sponzilli, Esq. ("EGS Dec.") at ¶ 2, **Ex. "A"**. Plaintiff's Verified Complaint claims Rutgers and PPD had come to Plaintiff's residence without a warrant or valid justification on multiple occasions. <u>Id.</u> at **Ex. "A"** at ¶ 8. Plaintiff's barebones allegations against Rutgers and PPD such as "bang[ing] on the door" and "demanding to speak with [Plaintiff]" do not meet the standard for the issuance of a preliminary injunction prohibiting UBHC, a mental health facility and State-designated mental health screener, from any contact with Plaintiff. As a matter of practice, in a crisis situation, UBHC does not enter a person's home without a police escort. Police summon the resident. If the resident does not respond, a doorbell may be pressed, or there may be knocking on the door by police. <u>See</u>, Declaration of Michele Miller, MSN, RN ("MM Dec.") at ¶ 5.

**Norris McLaughlin, P.A.**

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 4

Nevertheless, on July 16, 2025, the State Court granted Plaintiff's OTSC and entered the *Ex Parte* Order that temporarily restrained and enjoined Rutgers from "any and all contact with Plaintiff and from engaging in any further conduct of the type alleged in the Verified Complaint, including but not limited to visits to Plaintiff's residence, except by lawful process or court order." See, EGS Dec. at ¶ 3, **Ex. "B"**. N.J.S.A. 30:4-27.1, et seq., (the "NJ Screening Law"), does not require process or a court order to interact with a mentally ill person who may be a threat to themselves or others.

On July 17, 2025, Rutgers received a copy of Plaintiff's Verified Complaint and the *Ex Parte* Order. See, EGS Dec. at ¶ 4. On July 25, 2025, Rutgers filed a Notice of Removal and removed the State Court Action to this Court. See, ECF Doc. No. 1. On July 29, 2025, Rutgers filed an application for a Clerk's Order extending the time to Answer, Move or otherwise Reply to Plaintiff's Complaint pursuant to L. Civ. R. 6.1. See, ECF Doc. 3. Rutgers' application was granted on July 30, 2025, and Rutgers' responsive pleading due date was extended to August 21, 2025. See, July 30, 2025, Clerk's Text Order.

On July 30, 2025, Rutgers UBHC was contacted by the New Jersey Office of Homeland Security & Preparedness ("Homeland Security"), first by phone and then

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 5

by follow-up email to request a screening of Pro Se Plaintiff John Fakla ("Plaintiff") in light of a Facebook post by Plaintiff that Homeland Security determined that outreach is necessary. See, MM Dec. at ¶ 3, **Ex. "A"**. Rutgers respectfully submits that the temporary restraints should be vacated because the sweeping nature of the restraints prevents Rutgers UBHC from carrying out its statutory responsibilities to conduct an assessment under the NJ Screening Law and determine if the subject of the screening warrants further evaluation or action. Id. at ¶ 13.

## LEGAL ARGUMENT

### I. THIS COURT HAS THE POWER TO VACATE AN IMPROVIDENTLY ENTERED "EX PARTE" RESTRAINING ORDER OF A STATE COURT JUDGE ON REMOVAL.

Pursuant to 28 U.S.C. § 1450, "[w]henever any action is removed from a State court to a district court of the United States ... [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect **until dissolved or modified by the district court**." 28 U.S.C. § 1450 (emphasis added).

Once removed to federal court, "it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. Granny Goose Foods, Inc.. v. Brotherhood of Teamsters and Auto

4919-0488-6617, v. 2

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 6

Truck Drivers Local No. 70, 415 U.S. 423, 436 (1974). As the Supreme Court of the United States has explained, Section 1450 impliedly recognizes a "district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." Id.; see also First Atl. Leasing Corp. v. Tracey, 128 F.R.D. 51, 54 (D.N.J.1989).

Thus, federal courts have the authority to revisit temporary restraining orders entered by the state court, and, if appropriate, vacate or modify them.

The New Jersey Court Rules and Federal Rules of Civil Procedure discourage the entry of temporary restraining orders, especially ones that are issued *ex parte*, without a due process opportunity to be heard. Rule 4:52-1(a) of the New Jersey Rules of Court provides that any order "shall not…include any temporary restraints or other interim relief unless the defendants have either been given notice of the application or …. It appears from specific facts…that immediate and irreparable damage will probably result to the plaintiff before notice can be served or informally given and a hearing had thereon." N.J. Rule 4:52-1(a). Federal Rule 65 contains a similar provision, and further requires that any temporary restraining order must "define the injury and state why it is irreparable and why the order was granted without notice."

**Norris McLaughlin, P.A.**

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 7

As detailed in the Declaration of Edward G. Sponzilli, Esq., the State Court issued the *Ex Parte* Order, without hearing defendants at all. The *Ex Parte* Order does not define or explain the meaning of several key terms, and only broadly describes the prohibited conduct. This vague and overbroad *Ex Parte* Order was also entered without any written findings of fact or legal analysis. Instead, the State Court essentially adopted Pro Se Plaintiff's proposed order, without hearing from Rutgers or PPD or putting them on notice, without making any specific findings regarding the alleged irreparable harm or the likelihood of success on the merits of Plaintiff's claims, without balancing the equities, without an assessment of the public interest, and without narrowly tailoring the temporary restraints.

Accordingly, the *Ex Parte* Order was entered improperly as a matter of law, and Rutgers now moves on an emergent basis under Fed. R. Civ. P. 65 and 28 U.S.C. § 1450 to dissolve or vacate the ex parte restraints contained therein.

    **II.**    **DEFENDANT'S APPLICATION TO VACATE THE STATE COURT "*EX PARTE*" ORDER SHOULD BE GRANTED BECAUSE SAME WAS IMPROVIDENTLY GRANTED AND BECAUSE IT PREVENTS A PUBLIC ENTITY FROM EXERCISING ITS STATUTORY DUTY TO PROTECT THE PUBLIC AND THOSE EVIDENCING MENTAL ILLNESS.**

**Norris McLaughlin, P.A.**

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 8

### A. The State Court *Ex Parte* Order Failed to Meet the Requirements for Temporary Restraints Under Both State and Federal Law.

The standard for preliminary relief set forth in Crowe v. De Gioia, 90 N.J. 126 (1982), explains the movant must demonstrate that: (1) he will be irreparably injured if the relief is not granted; (2) the legal right underlying the claim is well-settled; (3) the material facts are not in dispute and establish a reasonable probability of success on the merits; and (4) the hardship to movant in the absence of relief outweighs the hardship imposed upon the defendant and the public by the issuance of relief. Id. at 132-34.

Similarly, Federal Rule of Civil Procedure 65 empowers courts to grant temporary and preliminary injunctive relief when warranted. Fed. R. Civ. P. 65. "[I]njunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharms, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quoting AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). To obtain a temporary restraining order or preliminary injunction under the Rule, a movant must show:

> (1) A reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured … if relief is not granted … [In addition,] the district court, in considering whether to grant [temporary or preliminary

**Norris McLaughlin, P.A.**

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 9

> relief], should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial on the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 174 (3d Cir. 2017) (quoting Del. River Port Auth. v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-20 (3d Cir. 1974)); Zaslow v. Coleman, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015) ("The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction."). Of these factors, the first two are "most critical," and a movant's failure to establish either at the "gateway" requires the denial of the requested relief. Reilly, 858 F.3d at 179 (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).

Had the State Court proceeded in accordance with the law above for the issuance of temporary restraints and had Rutgers been served and on notice of the application for temporary restraints, the Court would have determined Plaintiff failed to meet any of the Crowe factors and would have considered the arguments by Rutgers set forth below as to why the temporary restraints should not have been granted.

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 10

**A. Rutgers is Likely to Succeed on the Merits.**

On June 7, 1989, Public Law 1987, c. 116, known as the NJ Screening Law, went into effect. The NJ Screening Law (N.J.S.A. 30:4-27.l, et seq.) establishes the need for Designated Screening Centers to assess whether individuals meet the legal standards for mental illness and dangerousness and who should be treated in an involuntary psychiatric hospital. The role of Designated Screening Centers falls under the regulatory purview of the New Jersey Department of Human Services, Division of Mental Health Services ("DMHAS").

The NJ Screening Law also establishes the Short-Term Care Facilities ("STCF"), which consist of adult (18 years or older) closed acute psychiatric beds designated to serve specific geographic areas throughout the state. See, N.J.S.A. 30:4-27.2(bb). The STCF provides inpatient care for patients who are determined by the Designated Screening Center to meet the standards for mental illness and dangerousness at the time of admission and who cannot be treated in an alternative setting. See generally, N.J.S.A. 30:4-27.1(d). The role of Screening Centers in regard to STCF admissions and bed utilization falls under the regulatory purview DMHAS. See, N.J.S.A. 30:4-27.2(j).

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 11

The purpose of the Screen Centers is to provide clinical assessment and crisis stabilization for persons and to refer them for treatment in the least restrictive clinically appropriate setting as close to the individual's home as possible. See, N.J.S.A. 30:4-27.19(c)-(d). When a person is deemed as a potential danger to themselves or others, this person can be evaluated, pursuant to the NJ Screening Law, in order to protect the public and the screened individual who may be at risk. See, MM Dec. at ¶ 6; See also, N.J.S.A. 30:4-27.1(a)-(d).

Under N.J.S.A. 30:4-27.1(a)-(d), the Legislature declared that the State has an affirmative obligation to provide care, treatment, and rehabilitation to persons with severe mental illnesses who cannot care for themselves or who pose danger to themselves, others, or property.

Moreover, the purpose of the NJ Screening Law is to ensure that individuals with serious mental illness receive prompt, appropriate assessments and treatment. Screening services are designed both as preventative (diversion from unnecessary hospitalization) and protective (identifying those requiring involuntary care). Id. at ¶ 7. The State of New Jersey, Department of Human Services has designated Rutgers UBHC as the screener for the County of Middlesex. Id. at ¶ 8; See also, EGS Dec. at ¶ 5, **Ex. "C"** As such, Rutgers UBHC has an affirmative duty pursuant to the NJ

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 12

Screening Law to conduct a screening when an imminent threat to an individual's self or others exists. See, MM Dec. at ¶ 8.

The allegations set forth in Plaintiff's Verified Complaint demonstrate that professionals acted on behalf of Rutgers in accordance with the NJ Screening Law and the Verified Complaint is devoid of any factual basis for the need for *ad interim* injunctive relief.

### B. Rutgers will Suffer Irreparable Harm if Relief is Not Granted.

Restraining Rutgers from conducting a screening of Plaintiff would result in irreparable harm for which there is no adequate remedy at law. If Rutgers is restrained from conducting a screening of a subject individual, no legal route exists for evaluating those believed to meet involuntary commitment criteria or believed to be in need of other mental health services and treatment. The nature of mental health crises demands timely intervention. Screening is the essential first step in identifying individuals who pose a danger to themselves or others or who suffer from severe or untreated psychiatric conditions. Without the ability to conduct these assessments, Rutgers is deprived of its most basic and indispensable tool to fulfill its legal duty as the State-designated Middlesex County screener to protect the subject individual and the public. Restraining Rutgers frustrates the intent of the legislature

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 13

in enacting the New Jersey Screening Law. Plaintiff on the other hand, cannot demonstrate any legally cognizable injury, let alone one that is emergent when his claim is that he should be free of any legally mandated assessment.

Were the *Ex Parte* Order to remain in effect, public servants may be at risk. Given the request by Homeland Security, there is that very possibility here.

### C. The Possibility of Irreparable Harm Extends to Third Parties, Such as the Ones Identified in Plaintiff's Facebook Post.

The facts in this matter demonstrate that irreparable harm will possibly extend to third parties. As previously stated, Homeland Security contacted Rutgers UBHC and to request that Rutgers screen Plaintiff, pursuant to the NJ Screening Law, in light of a Facebook post by Plaintiff that Homeland Security determined that outreach is necessary. Specifically, Plaintiff's Facebook post references law enforcement officers, mental health physicians, public defenders, and prosecutors. See, MM Dec. at ¶ 3, **Ex. "A"**. Rutgers requests that this Court vacate the temporary restraints previously entered in the State Court Action in order to conduct a screening of Plaintiff, as requested by Homeland Security and authorized by N.J.S.A. 30:4-27.1 et seq. ("NJ Screening Law"), to prevent potential harm against individuals referenced in Plaintiff's Facebook post. Id. at ¶ 4.

Norris McLaughlin, P.A.

Hon. Claire C. Cecchi, U.S.D.J.
August 1, 2025
Page 14

**D. Screenings are in the public interest.**

As set forth above, Rutgers has an affirmative obligation to provide screenings in order to protect the public interest. These restraints prevent Rutgers UBHC from carrying out its statutory duty to protect the public interest as the State-designated screener for Middlesex County (where Mr. Fakla resides). See, MM Dec. at ¶ 10. Specifically, the temporary restraints prevent law enforcement and screeners from executing statutory obligations in relation to Plaintiff, negatively impacting the public. Id. at ¶ 14.

## CONCLUSION

For the foregoing reasons, Rutgers respectfully requests that this Court enter a preliminary injunction vacating the temporary restraints set forth in the *Ex Parte* Order.

Respectfully submitted,

/s/ Edward G. Sponzilli
Edward G. Sponzilli

cc: Hon. Renee Marie Bumb, Chief Judge, U.S.D.J. (via Federal Express)
John Fakla, Pro Se Plaintiff (via Certified Mail)

4919-0488-6617, v. 2