FROM THE DESK OF

# JOHN A FAKLA

August 3, 2025

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

JOHN FAKLA,
Plaintiff,
v.
UNIVERSITY BEHAVIORAL HEALTH CARE (UBHC), et al.,
Defendants.

Civil Action No. 2:25-cv-13764
**Hon. Claire C. Cecchi, U.S.D.J.**

**PLAINTIFF'S OPPOSITION TO DEFENDANT RUTGERS' MOTION TO VACATE TEMPORARY RESTRAINTS**

**PRELIMINARY STATEMENT**

Defendant Rutgers seeks to vacate a lawfully issued state court Temporary Restraining Order ("TRO") on the grounds that it was entered ex parte, lacked factual support, and prevents Rutgers from fulfilling duties under the NJ Screening Law. This motion misrepresents both the procedural history and the substantive factual record. Moreover, Rutgers' claim of irreparable harm is not only illusory, but disingenuous. Plaintiff was previously subjected to an involuntary screening (See Exhibit B) within the past few months, which resulted in no finding of dangerousness and no justification to hold him. This renders their claimed urgency hollow. Even more telling, Plaintiff submitted to the state court judge a series of emails obtained through discovery in related litigation, showing a longstanding pattern of collusion between Rutgers UBHC and the Middlesex County Prosecutor's Office. These records demonstrate

that Rutgers' conduct is part of a broader scheme of retaliatory misuse of the Screening Law against Plaintiff—intended not to protect public safety, but to harass, intimidate, and chill his exercise of constitutional rights.(See Exhibit C) The relief Rutgers seeks is based on manufactured threat narratives, not legitimate clinical or legal concerns.

The TRO, issued by the Hon. J. Randall Corman, J.S.C., on July 16, 2025, was based on detailed and credible evidence of a pattern of retaliatory, unauthorized mental health screenings conducted by Rutgers UBHC in coordination with the Piscataway Police Department. Plaintiff, acting pro se, submitted a Verified Complaint, exhibits, sworn statements, and telephone records substantiating the risk of continued harassment. (See Exhibit D)

Rutgers now attempts to have this Court invalidate the TRO based on vague and unverified claims involving Homeland Security, a mischaracterized Facebook post, and generalized statutory obligations. This Court should deny their motion in full.

**FACTUAL BACKGROUND**

On June 27, 2025, Plaintiff filed an Order to Show Cause and Verified Complaint in the Superior Court of New Jersey, docketed MID-L-003942-25. Plaintiff alleged that Rutgers UBHC, in concert with the Piscataway Police, had repeatedly targeted him for retaliatory mental health screenings, in connection with protected legal activity and public speech. The state court granted temporary restraints on July 16, 2025, enjoining further contact by UBHC without court order.

Plaintiff promptly served the TRO and accompanying documents on Rutgers via certified mail. Proof of service and USPS tracking

documentation are annexed hereto. Contrary to Defendant's assertions, the TRO was not a surprise; it followed weeks of escalating contact and threats. (See Exhibit A)

On August 1, 2025, Rutgers filed its motion to vacate, claiming the TRO was overbroad and unsupported. Rutgers' filing includes the Declaration of Michele Miller and a vague reference to a Homeland Security request regarding a Facebook post. However, Plaintiff was verifiably working out of state at the time referenced (July 30, 2025), (See Exhibit E) and the Facebook post in question simply shows a screenshot of the TRO. No threats were made.

## LEGAL STANDARD

Under 28 U.S.C. § 1450, all orders and injunctions entered in state court prior to removal remain in effect unless and until dissolved or modified by the federal court. Motions to vacate such orders are governed by Fed. R. Civ. P. 65 and applicable principles of federalism and comity.

To dissolve a TRO, the moving party must show that the order was issued improvidently or without meeting the requirements under Rule 65 and, where relevant, Crowe v. De Gioia, 90 N.J. 126 (1982).

## ARGUMENT

### I. THE TRO REMAINS VALID UNDER FEDERAL LAW

Federal courts honor state-issued TROs post-removal under 28 U.S.C. § 1450. Rutgers' assertion that the TRO lacks federal validity is

contrary to well-established precedent. See *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974).

## II. THE TRO WAS LAWFULLY ISSUED UNDER STATE LAW

Rutgers' assertion that it had no notice is factually incorrect and legally irrelevant. Plaintiff served the TRO and accompanying documents via certified mail, as permitted under N.J. Ct. R. 4:52-1(b). Even if there had been a service issue, Rutgers' remedy would lie in state court, not federal court.

Further, Judge Corman issued the TRO after reviewing:

- Plaintiff's sworn Verified Complaint showing their abusive practice and connection with the Middlesex County Prosecutors office.

- Text/voicemail messages left by UBHC

- Allegations of repeated in-person contact by police and UBHC staff

- Evidence of a pattern of retaliatory conduct connected to prior lawsuits

## III. PLAINTIFF SATISFIED THE CROWE STANDARD

1. **Irreparable Harm**: The threat of wrongful psychiatric detention and public targeting constitutes clear irreparable harm. Rutgers' pattern of harassment places Plaintiff's liberty and safety at risk.

2. **Likelihood of Success on the Merits**: Plaintiff has documented multiple contacts, messages, and incidents that suggest retaliatory abuse of mental health protocols.

3. **Balance of Equities**: Rutgers suffers no harm by being required to obtain court approval before contacting Plaintiff. Plaintiff, by contrast, faces constitutional violations and harm to liberty and personal safety.

4. **Public Interest**: The public has a strong interest in preventing state institutions from weaponizing health screenings against individuals engaged in legal and protected speech.

## IV. THE HOMELAND SECURITY ASSERTION IS BASELESS

Rutgers provides no documentation from Homeland Security, only hearsay from Michele Miller. Plaintiff received no outreach, warning, or inquiry from any federal agency. On July 30, 2025, Plaintiff was physically present and working in Pennsylvania (Porsche Warrington), far from Middlesex County.(See Exhibit E) This is also a violation of the TRO and another harassment attempt.

## V. THE FACEBOOK POST IS PROTECTED SPEECH

Exhibit A from defendants motion is a Facebook screenshot showing Plaintiff informing the public of his TRO. It contains no threats. It is political speech protected under the First Amendment and cannot lawfully serve as the basis for psychiatric intervention or emergency restraint.

## VI. FEDERALISM AND CONSTITUTIONAL STRUCTURE REQUIRE DEFERRAL TO STATE COURT

Rutgers invokes federal jurisdiction based on vague constitutional references. However, restraining orders fall within the State's police powers under the Tenth Amendment. This is reinforced by the Ninth Amendment, which protects unenumerated rights like personal dignity, security, and liberty from retaliatory abuse.

Under the U.S. Constitution, federal courts may supersede a state's police power only in limited circumstances:

1. **Federal Preemption**: Where federal and state law conflict, federal law prevails only where Congress has clearly expressed or implied an intent to preempt. No such intent exists here.

2. **Unconstitutional State Action**: When state action infringes upon individual rights (e.g., Equal Protection or Due Process violations), federal courts may intervene. No such constitutional infirmity is present in the issuance of this TRO.

In fact, federal courts apply a **presumption against preemption** in matters like health, safety, and welfare — all of which are clearly within New Jersey's jurisdiction. The TRO issued by the state court serves a legitimate public safety and individual liberty function.

## VII. Jurisdiction

As far as jurisdiction, I would argue that a simple invocation of constitutional rights doesn't grant the federal court to intercede. There is no diversity jurisdiction and their arguments as to the invocation of

constitutional rights is diminished by the police powers held by the state by virtue of the 9th and 10th Amendments.

The Ninth and Tenth Amendments to the United States Constitution play a role in the context of state court-issued restraining orders, particularly in discussions surrounding the balance of power between the states and the federal government, and the recognition of unenumerated rights.

1. **Tenth Amendment and state authority**
   - The Tenth Amendment reserves powers not delegated to the federal government to the states or the people.

   - State courts issue restraining orders as part of their authority to address domestic violence, harassment, and other threats to safety.

   - This falls under the states' traditional "police power" to protect the health, safety, and welfare of their citizens.

   - Therefore, the issuance and enforcement of restraining orders by state courts are generally considered within the scope of state authority under the Tenth Amendment.

🔷 **For the Tenth Amendment – State Police Power and TROs**

**Use in Section VI (Federalism and Constitutional Structure):**

The issuance and enforcement of a TRO by a state court falls squarely within New Jersey's police powers. Under the Tenth Amendment, those powers are reserved to the states. The U.S. Supreme Court has long upheld this principle. See *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905) ("[T]he state may enact laws to protect the public health

and safety under its police powers."); *Bond v. United States*, 572 U.S. 844, 854 (2014) ("State sovereignty is not just an abstract general idea but a constitutional safeguard.") It Confirms the principle that the federal government cannot commandeer state powers or interfere with traditional state functions.; *Printz v. United States*, 521 U.S. 898, 935 (1997) (holding that the federal government may not compel state officials to administer federal law).

These decisions reinforce that the TRO issued here is a proper function of state authority, and federal courts should not usurp that unless federal law preempts or a constitutional violation exists—neither of which applies. There is no express or implied preemption here, and federal intervention is improper.

2. **Ninth Amendment and unenumerated rights**
   - The Ninth Amendment indicates that the enumeration of specific rights in the Constitution does not mean that other rights retained by the people are not protected.

   - In the context of restraining orders, there can be arguments regarding the balance between the rights of the victim seeking protection and the rights of the individual against whom the order is sought.

   - For example, concerns might be raised about how a restraining order might impact an individual's "unenumerated rights," such as the right to association, the right to make decisions regarding one's family, or even, in some interpretations, the broader right to liberty.

   - While the Ninth Amendment doesn't create an independent source of rights enforceable against states or the federal

government, it reinforces the idea that there are fundamental rights not explicitly listed in the Bill of Rights that may be impacted by governmental actions, including state court orders.

3. **Important considerations**
   - Due Process: Any action by the state, including the issuance of a restraining order, must comply with due process, meaning the individual against whom the order is sought must receive notice and an opportunity to be heard in a fair proceeding. Balancing of Interests: State courts must carefully balance the interests of the individual seeking protection from harm with the rights of the individual against whom the restraining order is sought.

   - Legitimate State Interest: The state's interest in protecting its citizens from domestic violence and other harmful behaviors is generally considered a legitimate governmental interest justifying the issuance of restraining orders.

🔷 **For the Ninth Amendment – Unenumerated Rights**

**Use in Section VII (Jurisdiction):**

The Ninth Amendment protects unenumerated rights that are fundamental to individual liberty and dignity. Courts have long acknowledged that not all rights are explicitly written in the Constitution. See *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) (recognizing the right to privacy based on "penumbras" formed by explicit guarantees)A landmark case recognizing unenumerated rights (right to privacy) under the Ninth Amendment; *Roe v. Wade*, 410 U.S. 113, 152 (1973) ("The Ninth Amendment shows a belief that there are additional fundamental rights, protected from governmental infringement…"); *United Public Workers v. Mitchell*, 330 U.S. 75,

94–95 (1947) (acknowledging that the Ninth Amendment refers to rights retained by the people beyond those listed in the Constitution).

The TRO was issued to protect these unenumerated rights—such as the right to be free from arbitrary psychological intrusion including the right to be free from arbitrary state harassment and to speak publicly about misconduct and to speak out about abuse. These are precisely the types of rights the Ninth Amendment was designed to guard.

In conclusion, the Tenth Amendment confirms the states' power to issue restraining orders as part of their inherent police power to protect their citizens. While the Ninth Amendment might be referenced in arguments about the impact of restraining orders on unenumerated rights, due process considerations and the balancing of interests are crucial in ensuring the constitutionality and fairness of such orders.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Rutgers' motion in full and allow the TRO to remain in effect. Plaintiff further requests such other and further relief as this Court deems just and proper.

Respectfully submitted,
**John Fakla**
Pro Se Plaintiff

8/3/25